UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

MAY 2 4 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-359-GWU

DOYLE G. TIPPETT, PLAINTIFF,

VS: MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT,

INTRODUCTION

Doyle Tippett brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB) and on the unfavorable portion of his claim for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R.

1

404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's

2

opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir.

3

1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

4

The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Tippett, a 50 year-old former coal miner with a "marginal" education, suffered from impairments related to mild ankle arthritis, a history of bilateral ankle sprains with residual complaints of pain, degenerative disc conditions of L5-S1 and C7, fibromyalgia, chronic obstructive pulmonary disease, pneumoconiosis, non-insulin dependent diabetes and mild neuropathy, a bee sting allergy, obesity, hyperlipidemia, a hearing loss, depression, anxiety, chronic pain syndrome, and borderline intellectual functioning. (Tr. 14, 19). After March 8, 2003 the plaintiff was found to be totally disabled. (Tr. 27). Prior to this date, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 26-27). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered to have been totally disabled prior to March 8, 2003. (Tr. 27). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 24-25).

5

The Court must first determine the time period relevant to this appeal. Tippett filed his current applications for DIB and SSI on September 25, 2002. (Tr. 13). The plaintiff alleged a disability onset date of April 13, 1995 on his DIB application. (Tr. 147). Prior to these applications, the claimant had filed applications for Social Security Benefits on three previous occasions with the last of these applications being denied in an administrative decision dated May 11, 2000. (Tr. 13). The ALJ declined to reopen this application on the current claim.[1] (Tr. 13). Tippett's DIB-insured status was found by the current ALJ to have expired on December 31, 2000. (Tr. 26). Thus, the plaintiff must prove he became disabled between May 11, 2000 and December 31, 2000 to qualify for DIB. With regard to the SSI application, the pertinent time frame runs from the September 25, 2002 filing date through the March 7, 2003 date before the claimant was found disabled.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work along with such non-exertional restrictions as (1) an inability to more than occasionally stoop, bend from the waist to the floor, crawl or climb ladders, ropes, and scaffolds; (2) an inability to ever push or pull with the upper and lower extremities; (3) an inability to perform any overhead reaching; (4) a need to avoid exposure to temperature extremes, excessive humidity, vibration, or excessive noise; (5) an inability to ever perform work requiring acute, bilateral vision; (6) the need for a sit/stand option; (7) a need to avoid exposure to environmental pollutants such as smoke, chemicals,

---

[1] The ALJ indicated that the time period between 1998 and 2000 had not been adjudicated on the May 2000 denial decision but did not consider this time period on the current claim. (Tr. 13). The plaintiff has not raised this action as an issue and, the undersigned notes in passing that the evidence of disability for this time period is no stronger than for the time period that is before the Court.

6

fumes, or noxious gases; (8) a "limited but satisfactory" ability to relate to co-workers, use judgment, interact with supervisors, function independently, maintain attention and concentration, handle simple instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability; (9) a "limited but not precluded" ability to deal with the public, deal with work stresses, or understand, remember and carry out detailed instructions; and (10) being functionally illiterate. (Tr. 95-96). The individual would be able to perform work requiring simple, non-detailed instructions where the co-worker and public contact would be casual and infrequent and where supervision would be direct and non-confrontational with changes in the work place being infrequent and gradually introduced. (Tr. 96). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 97). Therefore, assuming that the vocational factors considered by Ellis fairly depicted Tippett's condition during the relevant time period, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. Tippett was found capable of performing a restricted range of light level work in an administrative decision which became final on May 10, 2000. (Tr. 106-117). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-3(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence

7

relating to such a finding..." The ALJ's findings of a restricted range of light level work is in accord with these directives.

During the time period pertinent to this appeal, no treating or examining source identified the existence of more severe physical restrictions than those found by the ALJ. The only activity restriction suggested by the staff at Appalachian Regional Healthcare, a treating source, was a need to quit smoking. (Tr. 238, 302, 532). The question was essentially consistent with the restrictions noted by Dr. Sudideb Mukherjee, a non-examining medical reviewer. (Tr. 446-454).[2] These reports provide substantial evidence to support the administrative decision.

Dr. Hughes Helm examined Tippett on March 8, 2003.[3] (Tr. 431-440). Dr. Helm's findings became the basis for the ALJ's conclusion that the plaintiff became disabled as of this date. (Tr. 21). In determining the claimant's onset date, the ALJ was not required to present evidence which would eliminate every other potential onset date but only establish that substantial evidence supported the chosen onset date. Blankenship v. Bowen, 874 F.3d 1116, 1121 (6th Cir. 1987). The ALJ noted that this was the first evidence in the record showing a deterioration of Tippett's condition since the May 10, 2000 final decision. (Tr. 21). Therefore, this chosen date appears reasonable and well-supported by substantial evidence.

---

[2] Dr. Mukherjee noted lesser restrictions in many areas, but did reference a limitation on hazards. (Tr. 450). The plaintiff has not advanced a specific argument about the omission of this factor.

[3] Dr. Helms had previously examined the claimant in November of 2002. (Tr. 415-421). However, since he was not properly licensed in the Commonwealth of Kentucky at this time, this report was invalid and was properly not considered by the ALJ. (Tr. 18).

8

The ALJ dealt properly with the evidence of record relating to Tippett's mental condition. The hypothetical question was compatible with the prior ALJ's findings. (Tr. 116). During the relevant time period, the plaintiff sought treatment for his mental problems at the Cumberland River Comprehensive Care Center. (Tr. 482-498). Specific mental restrictions were not identified. The claimant's Global Assessment of Functioning (GAF) was rated in July of 2000, July of 2001 and July of 2002 at 55. (Tr. 485, 489, 496). Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual for Mental Disorders</u> (4th Ed.-Revised, 1994). The mental restrictions presented in the hypothetical question appear compatible with this GAF.[4] A mental examination at East Kentucky Psychological Services on March 15, 2003, one week after Tippett was found disabled, revealed no mental or cognitive dysfunction with regard to day-to-day living, adequate general adaptive behavior, intact self-care and management capabilities, an unimpaired ability to communicate, and an individual described as being "sociable and personable." (Tr. 445). This report obviously does not suggest any mental deterioration at this time. Finally, the Court notes that ALJ's findings were arguably essentially consistent with the somewhat differently-worded, but not necessarily totally disabling, mental restrictions identified by Psychologist Ann Demaree, a non-examining medical reviewer. (Tr. 469-470). Therefore, substantial evidence supports this portion of the ALJ's denial decision.

Tippett argues that the ALJ did not properly evaluate his subjective pain

---

[4]The Cumberland River staff did rate the claimant's GAF at 50 in July of 2003, suggesting the existence of "serious" psychological symptoms. (Tr. 477). However, this was well after the relevant time frame.

9

complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Tippett was found to be suffering from a potentially painful condition during the relevant time period. However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. In June of 2000, treatment notes from Appalachian indicate that a physical examination was unremarkable and his medication was noted to be improving his quality of life and functional activity. (Tr. 263). An x-ray of the cervical spine at this time was negative. (Tr. 309). In November of 2001, an x-ray of the lumbar spine revealed mild degenerative changes at L3-L4 with anterior osteophytes, but was otherwise normal. An MRI Scan of the lumbar spine at this time indicated disc degeneration and mild bulging at L3-L4 and L4-L5 as well as disc degeneration and a small central herniated nucleus pulposus at L5-S1. (Tr. 307). The spinal canal was unremarkable. (Tr. 307). Treatment notes from Simon and True Medical Consultants, another treating source, reported normal reflexes in the upper and lower extremities in November of 2001. (Tr. 414). The Simon and True notes also revealed grossly intact motor, sensory, and neurological findings in December of 2001, as well as January, February, March, April, May, June, and July of 2002. (Tr. 397, 399, 401, 403, 405, 407, 409). As previously noted, at no time did a physician during the relevant time frame suggest that the

claimant's pain would impose more severe limitations than those found by the ALJ. Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Tippett's pain complaints.

Finally, Tippett asserts that the ALJ erred in failing to consider the combined effect of his impairments. However, the undersigned has already determined that the hypothetical question fairly characterized the plaintiff's mental and physical condition during the relevant time period. Thus, the ALJ implicitly considered the combined effects of all of his impairments. Therefore, the Court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the __24__ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE